IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

THOMAS JOHNSON, on behalf of      )
himself and on behalf of a        )
class of persons similarly        )
situated,                         )
                                  )
                Plaintiff,        )
                                  )
      v.                          )      1:13CV156
                                  )
DUKE ENERGY RETIREMENT CASH       )
BALANCE PLAN and DUKE ENERGY      )
CORPORATION,                      )
                                  )
                Defendants.       )

## MEMORANDUM OPINION AND ORDER

**OSTEEN, JR., District Judge**

Presently before the court are cross motions for summary judgment. Plaintiff Thomas Johnson ("Plaintiff"), asserting a single claim under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq., has filed a partial motion for summary judgment. (Doc. 25.) Defendants Duke Energy Retirement Cash Balance Plan and Duke Energy Corporation (collectively, "Defendants") have responded in opposition (Doc. 34), and Plaintiff has replied (Doc. 35). Defendants have filed a motion for summary judgment. (Doc. 27.) Plaintiff has responded (Doc. 33), and Defendants have replied (Doc. 38). These motions are now ripe for review, and, for the reasons that

follow, Defendants' motion will be granted, and Plaintiff's motion will be denied.

I. **BACKGROUND**

The following facts are undisputed.  During all times relevant to the present matter, Plaintiff was a participant in the Duke Energy Retirement Cash Balance Plan (the "Plan"). (Complaint ("Compl.") (Doc. 1) ¶ 7.)  Each participant in the Plan is given a cash balance account, consisting of bookkeeping entries representing the participant's pension benefit (expressed in dollars and cents).  (Id. ¶ 27.)  Pursuant to § 5.04 of the Plan, a participant is entitled to have his or her cash balance account credited with an "Interest Credit" on a monthly basis.  (Id., Ex. A, Duke Energy Retirement Cash Balance Plan ("The Plan") (Doc. 1-1) at 26 (Section 5.04).)[1]  "Interest Credits" are calculated by multiplying the cash account balance on the last day of the preceding month with the "Monthly Interest Rate" for that month.  (Id.)  "Monthly Interest Rate," in turn, "means . . . one (1) plus the Interest Factor for such month raised to the one-twelfth (1/12th) power, minus one (1)."[2]

---

[1] All citations in this Memorandum Opinion and Order to documents filed with the court refer to the page numbers located at the bottom right-hand corner of the documents as they appear on CM/ECF.

[2] This formula can be expressed algebraically for any given month as:  Monthly Interest Rate = $(1 + \text{Interest Factor})^{1/12} - 1$.

(Id. at 14 (Section 2.41).)  As used in the formula, the "Interest Factor" (for benefits accruing prior to January 1, 2013) was equal to the average yield on 30-year United States treasury bonds.  (Id.  Section 2.39).)  Irrespective of the actual 30-year Treasury bond yield, the Plan set a floor (minimum) interest rate of 4% and a ceiling (maximum) interest rate of 9% for pre-2013 benefits.  (Id.)  Benefits accruing on or after January 1, 2013, were set at a fixed rate of 4%.[3]  (Id.)

Plaintiff does not allege that the Plan Administrator miscalculated the Monthly Interest Rate; rather, Plaintiff argues that Defendants impermissibly rounded the Monthly Interest Rate to the nearest one-thousandth of a percent (0.001%)[4] before multiplying the Monthly Interest Rate by the prior month's cash balance.  (Compl. (Doc. 1) at 8-9.)

As an example, in February 2006 the Interest Factor was 4.60% and the cash account balance was $171,863.05. (See id. (Doc. 1-2) at 1.)  The resulting Monthly Interest Rate (rounding

_____

[3] Inserting any potential value into the Monthly Interest Rate's algebraic formula necessarily produces a number with a nonterminating decimal.  For example, assuming the 10-year treasury yield for any given month was 4.03%, the Monthly Interest Rate would equal $(1 + .0403)^{1/12} - 1 = 0.0032978537514263$.

[4] Rounding to the nearest one-thousandth of a percent (.001%) is identical to rounding to the nearest one-hundredth-thousandth (0.00001) of a numeral.

to 17 decimal places) would be 0.00375481218114615. Rounding to the one-hundredth-thousandth, as was Defendants' practice, results in a Monthly Interest Rate of .00375. Applying these Monthly Interest Rates produces Interest Credits of $645.31 and $644.49, respectively.[5] Plaintiff argues that the rounding discrepancies results in an underpayment of Interest Credits, totaling $41.80 between January 2006 and October 2012.[6] (Compl. (Doc. 1) at 2.)

## II. <u>POSTURE</u>

Plaintiff filed the instant lawsuit with this court before exhausting the formal channels of the Plan's administrative claims process. (Mem. Op. & Order (Doc. 19) at 2–3.) Article XI of the Plan, setting forth the procedures for filing a claim, bars a claimant from bringing suit before exhausting the two-tiered administrative claims process. (The Plan (Doc. 1-1) at 47–49.) Defendants opted to treat the Complaint filed in this case as a written claim for benefits under the Plan. (Mem. Op.

---

[5] Algebraically, .00375481218114615 × $171,863.05 = $645.31. While .00375 × $171,863.05 = $644.49.

[6] Plaintiff's calculation of the total underpayment of Interest Credits obviously omits those months when the Defendants' rounding convention worked in his favor, i.e., when the Monthly Interest Rate was rounded up. This court further recognizes that since all post-January 1, 2013 benefits will be calculated using a set monthly interest rate of 4% (The Plan (Doc. 1-1) at 14 (Section 2.39)), the resulting Monthly Interest Rate will always be rounded down at the one hundredth-thousandth's place.

& Order (Doc. 19) at 4.)  The Plan Administrator's delegate and record-keeper, Aon Hewitt, sent Plaintiff a letter notifying him that his claim had been denied.  (Id.)  The letter further informed Plaintiff that he had the right to appeal the denial of benefits to the "Duke Energy Claims Committee," the second and final step in the administrative claims process.  While Plaintiff's appeal to the Duke Energy Claims Committee was under consideration, this court granted Defendants' motion to stay, pending final resolution by the appeals committee. (Id. at 10.) On September 19, 2013, the Duke Energy Claims Committee denied Plaintiff's appeal.  (Declaration of Richard P. Jefferies ("Jefferies Decl."), Ex. B (Doc. 29-2).)

Also of procedural relevance in the present matter is Plaintiff's participation in the settlement of George v. Duke Energy Retirement Cash Balance Plan, No. 8:06-cv-00373-JMC, filed in United States District Court for the District of South Carolina. (See Defs.' Mem. of Law in Supp. of Mot. for Summ. J. ("Defs.' Br."), Ex. B, George Settlement (Doc. 28-2).)  In the George Complaint, the class action plaintiffs alleged that during 1997–1998, Duke Energy miscalculated the Interest Credits under the Plan by changing the reference date for determining the Interest Factor.  (Id., Ex. A, George Am. Compl. (Doc. 28-1) at 13-15.)  In the George settlement, the class, which included

Plaintiff, broadly released "fully, finally and forever . . .
all causes of actions . . . known or unknown . . . that were
asserted or could have been asserted in the Complaint or Amended
Complaint regarding the Plan, including the design and adoption
of the Plan and the implementation of the Cash Balance Plan
Amendment . . . ."  (Id., Ex. B, George Settlement (Doc. 28-2)
at 13-15 (Section 1.45).)  However, the same settlement carved
out from the release:

> [A]ny claim for an alleged vested benefit allegedly
> due under the Plan pursuant to ERISA § 502(a)(1)(B)
> where such claim is not related to (A) the terms of
> this Settlement Agreement, or (B) the acts, omissions,
> facts, matters, transactions, or occurrences that have
> been or could have been alleged or referred to in the
> Action.

(Id. at 13 (Section 1.45(d).)  Plaintiff received $424.63 from
the George settlement.  (Jefferies Decl. (Doc. 29) ¶ 23.)

## III. **LEGAL STANDARD**

A motion for summary judgment is appropriately denied when
an examination of the pleadings, affidavits, and other proper
discovery materials before the court demonstrates a genuine
issue of material fact exists. Fed. R. Civ. P. 56(c); Celotex
Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). In considering a
motion for summary judgment, the court is not to weigh the
evidence, but rather must determine whether there is a genuine
issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242,

250 (1986). The court must view the facts in the light most favorable to the nonmovant, drawing inferences favorable to that party if such inferences are reasonable. Id. at 255. However, there must be more than a factual dispute; the fact in question must be material, and the dispute must be genuine. Id. at 248. A dispute is only "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

"When faced with cross motions for summary judgment, as in this case, the court must consider 'each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law.'" Pediamed Pharm., Inc. v. Breckenridge Pharm., Inc., 419 F. Supp. 2d 715, 723 (D. Md. 2006) (quoting Rossignol v. Voorhaar, 316 F.3d 516, 523 (4th Cir. 2003). "The court must deny both motions if it finds there is a genuine issue of material fact, but if there is no genuine issue and one or the other party is entitled to prevail as a matter of law, the court will render judgment." Id. (internal quotation marks omitted).

**IV.**  **ANALYSIS**

Defendants have asserted three independent grounds for summary judgment. Specifically, Defendants argue that (1) the adoption of the rounding convention was within the discretion of

the Plan Administrator, (2) the claim is barred by virtue of being filed outside the Plan's claim limitations period, and (3) Plaintiff released his right to bring suit pursuant to the terms of the George settlement. The first argument — the propriety of the rounding convention — can properly be considered the determinative legal question. Plaintiff contends that it is entitled to judgment as a matter of law on the rounding convention issue and that Defendants' two affirmative defenses fail. Because this court finds that the Plan Administrator did not abuse his discretion by adopting the decision to round, summary judgment is appropriately granted in favor of Defendants. This court declines to address the two remaining defenses asserted by Defendants.

Defendants argue that the decision to round was a matter of discretion properly afforded to the Plan Administrator. Plaintiff counters that mathematical formulas are not discretionary functions under ERISA.

ERISA provides a claimant with a civil cause of action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). In Firestone Tire and Rubber Co. v. Bruch, the Supreme Court held that courts reviewing the denial

of benefits under an ERISA plan should apply a de novo standard "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." 489 U.S. 101, 115 (1989). In making this determination, "ERISA plans, as contractual documents, are reviewed de novo by the court to determine the degree of discretion afforded to the plan administrator." Hung v. Guardian Life Ins. Co. of Am., 28 Fed. Appx. 268, 272 (4th Cir. 2002) (citing Booth v. Wal-Mart Stores, Inc. Assocs. Health & Welfare Plan, 201 F.3d 335, 341 (4th Cir. 2000)). "Where discretion is conferred upon the trustee with respect to the exercise of a power, its exercise is not subject to control by the court except to prevent an abuse by the trustee of his discretion." Booth, 201 F.3d at 341 (internal quotation marks omitted); see de Nobel v. Vitro Corp., 885 F.2d 1180, 1186 (4th Cir. 1989) ("The threshold question for reviewing courts is now whether the particular plan at issue vests in its administrators discretion either to settle disputed eligibility questions or to construe 'doubtful' provisions of the plan itself.").

Here, the Plan explicitly confers the Plan Administrator with the "full power, authority, and discretion to control and manage the operation and administration of the Plan and to construe and apply all of its provisions . . . ." (The Plan

(Doc. 1-1) at 43 (Section 10.03).)  The same section goes on to state that "[a]ll discretionary powers conferred upon the Plan Administrator shall be absolute" including the power to "construe and interpret the Plan and Trust Agreement and to determine all questions arising in the administration, interpretation and operation of the Plan . . . ."  (Id.)  This court finds that the Plan unambiguously affords the Plan Administrator with discretionary authority to construe the terms of the Plan.  Nevertheless, two intertwined inquiries remain: (1) whether the decision to round was discretionary and, if so, (2) whether such a decision amounts to an abuse of discretion.

### A.  Discretionary Function

Plaintiff argues that Defendants, "rather than directly following [the Plan] formula" for Monthly Interest Rates, instead "insert[ed] the additional step of rounding off the Monthly Interest Rate to the nearest one-thousandth before multiplying by the prior month's account balance."  (Pl.'s Br. in Supp. of Mot. for Summ. J. ("Pl.'s Br.") (Doc. 26) at 8.)  In other words, Plaintiff argues that the decision to round was not in the Plan Administrator's discretion because "mathematical formulas are not subject to discretion."   (Id.)

"When an ERISA-governed policy's terms are unambiguous, the plan administrator is compelled to give effect to the plan's

-10-

plain meaning, and a failure to do so is necessarily an abuse of discretion." Brunswick Surgical Ctr., LLC v. CIGNA Healthcare, Civ. No. 09-5857, 2010 WL 3283541, at *4 (D.N.J. Aug. 18, 2010); see Gosselink v. Am. Tel. & Tel., Inc., 272 F.3d 722, 727 (5th Cir. 2001) ("[I]f an administrator interprets an ERISA plan in a manner that directly contradicts the plain meaning of the plan language, the administrator has abused his discretion."); Admin. Comm. of Wal-Mart Stores, Inc. v. Gamboa, 479 F.3d 538, 542 (8th Cir. 2007); see also Williams v. Caterpillar, Inc., 944 F.2d 658, 661 (9th Cir. 1991) ("[W]here a court finds that a plan in question leaves no room for fiduciary discretion, it must review a fiduciary's interpretations . . . de novo . . . ."). Thus, if the decision to round was discretionary, then it is governed by the abuse of discretion standard. If the decision to round was a non-discretionary "additional step," then the Plan Administrator's failure to adhere to the Plan's plain language would constitute an abuse of discretion.

Here, this court finds that the decision to round was a necessary step mandated by the Plan's Monthly Interest Rate

formula, which, by definition, produces an irrational number.[7] Within the confines of this step, this court further finds that the specific rounding choice made by the Plan Administrator was a discretionary function expressly conferred to him by the Plan.

Irrational numbers, such as pi, are by definition nonterminating and nonrepeating decimals.[8]  See Carter et al., Algebra II at 11 (2011).  Because computers and calculators have finite amounts of memory, it would be impossible to use irrational numbers in any calculation without rounding (or

_____

[7] The parties do not seem to genuinely dispute the creation of an irrational number from the formula.  (See Defs.' Mem. (Doc. 28) at 13 ("The monthly interest rate formula always generates a never-ending decimal . . . .") and Pl.'s Br. in Opp'n to Defs.' Mot. for Summ. J. ("Pl.'s Br.") (Doc 33) at 18 n.18 ("Plaintiffs do not concede that all possible Monthly Interest Rates are irrational numbers.").)  Although Plaintiff does not concede all possibilities, Plaintiff does not identify any monthly interest rates that do not result in an irrational number.  More pointedly, Plaintiff has not identified any historical calculations that did not result in an irrational number.

[8] For example, pi has been calculated to ten trillion decimal places without terminating.  See Charles Cooper, "Pi Calculated to its Ten Trillionth Digit," CBS News (Oct. 20, 2011), http://www.cbsnews.com/news/pi-calculated-to-its-ten-trillionth-digit/.

truncating)[9] the decimal at some point.  (See Defs.' Br., Ex. E,
John Tabak, Numbers: Computers, Philosophers, and the Search for
Meaning at 56-57 (2004) (Doc. 28-5 at 4-5 ("These kinds of
numbers represent an additional challenge to computer designers
because they cannot be stored with perfect accuracy. There will
never be enough memory to do so."); id., Ex. D, McCune et al.,
Algebra at 4 (1997) (Doc. 28-4 at 4) ("For computational
purposes we can only approximate irrational numbers.").) While a
computer program such as Microsoft Excel does not show this
"extra" step of rounding, it implicitly rounds the irrational
number to use it in its calculation.[10]  In light of their
nonterminating nature, multiplying irrational numbers (the
Monthly Interest Rates) with rational numbers (the participants'
account balances) necessarily involves rounding the irrational
numbers. Indeed, both parties acknowledge that to use an
irrational number in a calculation, the number must be rounded.
(See Pl.'s Br. (Doc. 26) at 9-10 ("In order to achieve a correct

_____

[9] Like rounding, truncating limits the number of digits
after the decimal.  Unlike rounding, truncating ignores the
value of the digit after the target decimal place. For example,
truncating .035659 at five decimal places would require ignoring
the value of the decimal's sixth digit, resulting in a truncated
number of .03565.  Thus, truncating has the same effect as
always rounding down.  On the other hand, rounding to five
decimal places would result in .03566.

[10] This fact is described in the affidavit of Michael Archer
(Declaration of Michael A. Archer ("Archer Decl.") (Doc. 30) at
5) and is not disputed by Plaintiff.

result, the irrational number must be calculated to a number of digits sufficient to achieve whatever level of precision is required in the final answer."); id. at 9 ("It is not necessary, however, to stop calculating at the 6th, 7th, or any other particular point so long as sufficient digits are calculated to achieve a correct result.") (emphasis added); Defs. Br. (Doc. 28) at 14 (noting that "no computer can calculate interest credits without rounding or truncating," instead "[t]he calculator or computer system would simply round the interest rate in the background using its own internal rounding convention when carrying out the calculations").) This court therefore finds that the decision to round is mathematically required in some form to use the Monthly Interest Rate in the Interest Credit calculation.

The crux of Plaintiff's argument is that Defendants' rounding convention does not retain enough significant digits to ensure the result is accurate to the nearest penny. (See Pl.'s Br. (Doc. 26) at 9–10.) Although perhaps mathematically correct, Plaintiff's argument appears to assume a level of accuracy in the method of calculation not required by the Plan.

Unlike Defendants who round to five decimal places, Microsoft Excel automatically rounds nonterminating decimals to 17 digits. (Archer Decl. (Doc. 30) at 5.) Plaintiff argues that

using such a high number of digits would increase the calculation's precision and perhaps, in certain instances, it would.  However, for purposes of determining the standard of review applicable to the Plan Administrator's decision, the determinative legal question is not whether the Plan Administrator used certain best available technology to perform the calculation, but, rather, whether he performed a discretionary task.  As discussed below, this portion of Plaintiff's argument more appropriately relates to applying the abuse of discretion standard rather than determining if the standard applies.

Ultimately, the Plan is silent as to the amount of decimal places that should be used to calculate the Monthly Interest Rate. The Plan Administrator could have rounded the Monthly Interest Rate to 1 decimal place, 10 decimal places, or 1,000 decimal places; it was a matter of discretion.  While the choice itself was discretionary, the consequence of this choice, i.e., whether making such choice amounts to an abuse of discretion, is a separate legal inquiry.

Before addressing the cases cited by Plaintiff in support of his argument, this court notes that Plaintiff's factual argument is founded upon, and undermined by, a discretionary determination as to the manner in which the interest credits are

calculated.  To illustrate, Plaintiff argues that "if Duke had
used the interest rates as calculated by computers to seventeen
decimal places, the resulting Interest Credits would have been
correct because the rounding off that computers perform is too
insignificant to affect the result." (Pl.'s Br. (Doc. 33) at
19.)  Inherent in that assertion is a determination that the
interest rate should be calculated by a computer.  However,
there are no provisions in the Plan requiring calculations by a
specific method, whether by the use of a computer, a calculator,
an adding machine, a slide rule, or by hand.  By assuming a
level of precision available through computer calculations,
Plaintiff has assumed a discretionary fact not required by the
Plan, that is, the manner by which the calculations are to be
made.

Furthermore, even assuming computers are required to
perform the interest calculation, Plaintiff's arguments reflect
the discretionary impact resulting from the selection of a
particular computer or computer program.  Plaintiff argues that
"the requisite level of precision is more than satisfied by the
15 significant figures Duke admits can be easily calculated
using computers."  (Id. at 18.)  Plaintiff later asserts that
"if Duke had used the interest rates as calculated by computers
to seventeen decimal places . . . ." (Id. at 19.)  As described

in the record and hereinabove, the number of decimal places selected by a particular computer or program is a matter inherent within the operating system of the computer.  However, there is nothing in the Plan to require a particular brand of computer or computer program.

As Plaintiff's arguments reflect, all calculations involving irrational numbers inherently involve some discretionary termination to the infinite combinations of digits that comprise an irrational number, whether that occurs as a result of a conscious choice or a particular device's inherent limitations. Because neither party has been able to identify a required number of decimal places or a required method of calculation, the calculation of interest by any method involves a discretionary determination.  This court therefore finds that Plaintiff's argument requires an inherent factual assumption not required by the Plan, that is, the use of a computer programmed to perform calculations to fifteen or more decimal places to conduct the interest calculation.

Plaintiff, objecting as a matter of law to the argument that the rounding decision is a discretionary function, cites a string of cases to support the blanket proposition that "mathematical formulas are not subject to discretion."  (Pl.'s

Br. (Doc. 26) at 8.)  This court disagrees with Plaintiff's
characterization of these cases.

ERISA creates a cause of action for breach of fiduciary
duties with respect to the administration of an ERISA-governed
plan.  29 U.S.C. § 1132(a) (creating a cause of action under
ERISA); see 29 U.S.C. § 1104 (setting forth the fiduciary duties
under ERISA). The Supreme Court has held that "a person is a
fiduciary with respect to a plan, and therefore subject to ERISA
fiduciary duties, to the extent that he or she exercises any
discretionary authority or discretionary control respecting
management of the plan . . . ."  Varity Corp. v. Howe, 516 U.S.
489, 498 (1996) (internal quotation marks omitted).  In the
context of determining whether an act was discretionary and
thereby gives rise to fiduciary duties, several courts have
found that calculating ERISA benefits "pursuant to the terms of
the plan [is] a mathematical calculation that [does] not require
the exercise of discretion."  E.g., Fitch v. Chase Manhattan
Bank, N.A., 64 F. Supp. 2d 212, 229 (W.D.N.Y. 1999); MacMillan
v. Provident Mut. Life Ins. Co. of Philadelphia, 32 F. Supp. 2d
600, 606 (W.D.N.Y. 1999) (holding discretionary authority "is
limited to discretion to determine eligibility for benefits, and
does not extend to the calculation of the amount of benefits");
see Christensen v. Qwest Pension Plan, 376 F. Supp. 2d 934, 943-

-18-

44 (D. Neb. 2005) (collecting cases), aff'd, 462 F.3d 913 (8th Cir. 2006).  These cases accord with guidance provided by the Department of Labor:

> [A] person who performs purely ministerial functions such as the types described above [including the calculation of benefits] for an employee benefit plan within a framework of policies, interpretations, rules, practices and procedures made by other persons is not a fiduciary because such person does not have discretionary authority or discretionary control respecting management of the plan . . . .

29 C.F.R. § 2509.75-8.

These cases uniformly support the proposition that performing benefit calculations is a ministerial task not giving rise to fiduciary duties under ERISA.  These cases do not, however, establish that a fiduciary lacks the discretion to interpret a plan formula or set forth policies detailing how to calculate benefits pursuant to a plan formula when the plan is silent as to certain calculations inherent within the stated formula.  Here, inserting numbers into a formula is a non-discretionary act "within a framework of policies, interpretations, rules,  practices and procedures . . . ." Id.  Deciding where to round those numbers, on the other hand, is a necessary, discretionary step in the process.  In other words, the discretionary decision of where to round irrational numbers is part of the greater framework of policies necessary to

implement and operate the Plan; the mechanical act of rounding is a ministerial task within that framework.

Having concluded that the Plan confers the Plan Administrator with discretion and that the rounding decision was discretionary, this court next turns to whether such a decision amounts to an abuse of discretion.

**B.** **Abuse of Discretion**

The Fourth Circuit has held "that the abuse of discretion standard, not the arbitrary and capricious standard, is the appropriate one for judicial review of a fiduciary's discretionary decision under ERISA." Booth, 201 F.3d at 341. Under the abuse of discretion standard, a "discretionary decision will not be disturbed if reasonable, even if the court itself would have reached a different conclusion." Id.; see id. at 344 ("Thus, we are confined to a review of whether a decision . . . was an unreasonable exercise of its discretion . . . ."). The Fourth Circuit has listed eight nonexclusive factors to guide courts in determining if a plan administrator's discretionary decision was unreasonable:

> (1) the language of the plan; (2) the purposes and goals of the plan; (3) the adequacy of the materials considered to make the decision and the degree to which they support it; (4) whether the fiduciary's interpretation was consistent with other provisions in the plan and with earlier interpretations of the plan; (5) whether the decisionmaking process was reasoned and principled; (6) whether the decision was

consistent with the procedural and substantive
        requirements of ERISA; (7) any external standard
        relevant to the exercise of discretion; and (8) the
        fiduciary's motives and any conflict of interest it
        may have.

Booth, 201 F.3d at 342-43.

        Here, with respect to the first factor, the Plan clearly

and broadly delegates authority to the Plan Administrator to

construe the terms of the Plan.  The Plan grants the Plan

Administrator the "full power, authority, and discretion to

control and manage the operation and administration of the Plan

and to construe and apply all of its provisions . . . ."  (The

Plan (Doc. 1-1) at 43 (Section 10.03).)  Because the Monthly

Interest Rate mathematically requires rounding and because the

Plan is silent as to the rounding convention to be used, this

court finds such decision properly falls within the broad

contractual grant of discretion.  See Demirovic v. Bldg. Serv.

32 B-J Pension Fund, 467 F.3d 208, 215 (2nd Cir. 2006) ("Where,

as here, the plan is silent on the issue of non-medical

vocational characteristics, the nature of this consideration

will be within the plan administrators' broad

discretion . . . .").

        As for the second factor, the Supreme Court has noted that

ERISA represents a "careful balancing between ensuring fair and

prompt enforcement of rights under a plan and the encouragement

of the creation of such plans." Aetna Health Inc. v. Davila,
542 U.S. 200, 215 (2004) (internal quotation marks omitted).
The Supreme Court has further stated that the deference afforded
to plan administrators under its decision in Firestone strikes
the appropriate balance between "ensur[ing] that employees . . .
receive the benefits they [have] earned" on one hand and, on the
other, not creating a system "so complex that administrative
costs, or litigation expenses, unduly discourage employers from
offering [ERISA] plans in the first place." Conkright v.
Frommert, 559 U.S. 506, 516-17 (2010) (citation omitted).
Therefore, Firestone deference appropriately accounts for the
overarching, competing goals of ERISA generally.

Looking at the goals of this particular Plan, the Duke
Energy Claims Committee noted that "[r]ounding is helpful to
participants who want to do their own benefit calculations
because it reduces the number of digits that the participant
must use." (Jefferies Decl., Ex. B (Doc. 29-2) at 6.) Although
the Fourth Circuit has noted that "a major purpose of ERISA was
to aid employees' knowledge and receipt of benefits," Holland v.
Burlington Indus., Inc., 772 F.2d 1140, 1146 (4th Cir. 1985)
aff'd sub nom. Brooks v. Burlington Indus., Inc., 477 U.S. 901
(1986), this court does not find this rationale particularly
persuasive in the present case. As previously discussed, a

basic computer program such as Microsoft Excel (rounding to 17 decimal places) would produce a different calculation for benefits than a basic hand-held calculator (using the Plan's current rounding convention).  There is no indication in the record that employees use basic calculators with a greater frequency than computer programs, or vice versa.  Therefore, the claim that rounding aids employees in understanding the Plan is overstated on the facts before the court.  However, this court certainly does not find that rounding hinders Plan understanding; a definite rounding convention as opposed to an unknown existing in a third-party computer program does promote consistency and certainty.  Moreover, this court finds that Firestone deference generally encompasses Plaintiff's concern that his benefits be calculated with exact precision.  As such, this court does not weigh the second Booth factor heavily in its analysis.  Even assuming the "errors" in calculation due to rounding ran contrary to the Plan and its goals, this court would not find such factor sufficient to sway the analysis in favor of Plaintiff under the abuse of discretion standard.

The materials relied on to support the rounding convention reinforce Defendants' position.  First, it is undisputed that the Plan itself is silent as to the rounding convention to be used.  The Duke Energy Claims Committee noted that the Plan's

Summary Plan Description ("SPD")[11] showed an example where the Monthly Interest Rate was calculated to six decimal places. (Jefferies Decl., Ex. B (Doc. 29-2) at 7-8.)  The SPD did not detail how the sixth decimal place was being used.  As the Duke Energy Claims Committee found, and this court agrees, an SPD need not include every detail of a plan.  E.g., Heffner v. Blue Cross & Blue Shield of Alabama, Inc., 443 F.3d 1330, 1341 (11th Cir. 2006). And while "representations in a SPD control over inconsistent provisions in an official plan document," Aiken v. Policy Mgmt. Sys. Corp., 13 F.3d 138, 140 (4th Cir. 1993) (per curiam), here, the Plan does not address, and therefore does not conflict, with the example shown in the SPD.  Moreover, in the 1997 "plan provisions document"[12] a Monthly Interest Rate example calculation is shown rounded to five decimal places.  (Jefferies Decl., Ex. A, Excerpts from Administrative Record AR 1809 (Doc. 29-1) at 55; see Jefferies Decl. (Doc. 29) at 5.)  The 2012 plan

_____

[11] SPDs are ERISA-required documents that must be "provided to plan participants and that must summarize the plan in easily understood terms." Brenner v. Johns Hopkins Univ., 88 Fed. Appx. 555, 556 (4th Cir. 2004); see 29 U.S.C. §§ 1022, 1024(b).

[12] Mr. Jefferies, the Director of Retirement for Duke Energy, described the purpose of the plan provisions document as follows: "[T]he plan does not contain all of the numerous operational record keeping steps for the Plan.  Instead, these steps are set forth in what are known as 'plan provisions' documents, which set forth specific procedures and provide examples to be followed in calculating benefits under the Plan." (Doc. 29 at 3.)

provisions document contains a similar example, also rounding the Monthly Interest Rate to five decimal places.  (Id., AR 577-78 (Doc. 29-1) at 36–37; see Jefferies Decl. (Doc. 29) at 4.)  Based on these documents, this court finds that the Plan Administrator's interpretation had a basis in the collective plan documents.  More importantly, the fact that the Plan Administrator has consistently interpreted the rounding convention throughout the Plan's existence strongly contributes to the reasonableness determination under Booth's third and fourth factors.

While not listed under any specific Booth factor, Plaintiff essentially advances three arguments explaining why the decision to round is inappropriate.  First, Plaintiff claims that rounding is a separate mathematical operation (i.e., an "extra step") that changes the result.  (Pl.'s Reply in Supp. of Mot. for Partial Summ. J. (Doc. 35) at 7.)  As discussed above, this court finds such argument meritless.  By definition, the Monthly Interest Rate produces an irrational number.  To utilize an irrational number in multiplication, the irrational number must be rounded.  While a computer program such as Microsoft Excel does not show this "extra" step of rounding, it implicitly rounds the irrational number to use it in its calculation.  The fact that the Plan Administrator chose to explicitly round the

number rather than allow a program to implicitly perform this step does not alter the fact that both methodologies require rounding.  The discrepancy between the two methods is the location of the rounding, not the rounding itself.

Second, Plaintiff contends that rounding is a mathematical operation that changes the result of a calculation. Plaintiff's argument assumes that the Monthly Interest Rate produces one "correct" answer.  Instead, the end-result of the calculation will inevitably vary based on the number of decimal places the irrational number extends.  Even assuming the rounding convention utilized does not produce the most accurate answer in terms of mathematical calculations in each individual instance, that finding is not equivalent to Defendants performing a separate calculation altering the end-result.

Lastly, Plaintiff argues that Defendants' rounding is not neutral in effect.  Here, Plaintiff presents a strong argument. Defendants claim that rounding, by its very nature, would produce numbers that round up evenly with numbers that round down over an extended time horizon.  In other words, Defendants contend rounding is a randomized process and only though blind chance has Plaintiff allegedly been injured.  Defendants' premise is true, but it ignores two key points.  First, over the course of the Plan, low Treasury yields have created many months

where the Monthly Interest Rate falls below the 4% floor.
Pursuant to the Plan, this 4% floor acts as the minimum Monthly
Interest Rate.  Inserting 4% into the Monthly Interest Rate
formula produces a number that always rounds down.  Over the
life of the Plan, this frequent occurrence has resulted in
Plaintiff's Monthly Interest Rate being rounded down more
frequently than rounded up.  Second, the Plan has been amended
to a fixed rate of 4% for non-collective bargaining Plan
participants after January 1, 2013, thus perpetuating the
rounding down of Monthly Interest Rates for this category of
employees.

While this court is sympathetic to Plaintiff's non-
neutrality rounding argument, it does not render the process
used by the Plan Administrator unprincipled or unreasoned under
the fifth <u>Booth</u> factor, nor does it render the decision
unreasonable as a whole.  While Defendants assert post hoc
rationalizations for why the Plan Administrator may have
initially made the decision to round (e.g., to aid in employee
understanding), neither party has presented any evidence of the
actual rationale used.  Without any information on the actual
reasoning employed by the Plan Administrator, this court is

unable to make a finding benefiting either party on the fifth Booth factor.[13]

Specifically addressing Plaintiff's non-neutrality argument, this court finds that the harm suffered does not amount to an abuse of discretion. Two undisputed facts undercut Plaintiff's non-neutrality argument. First, when faced with randomized treasury yields (as was the case when the Plan was adopted), rounding will be net neutral in its effect. In other words, rounding random numbers will produce half the number set rounding up and half rounding down. Second, generally, rounding is more fair than truncating. If the Plan Administrator had decided to truncate the decimal after five digits it would have the practical effect of always rounding the Monthly Interest Rate down.

More fundamentally, the relevant ERISA analysis is one of administrator discretion, not whether "the court itself would have reached a different conclusion." Booth, 201 F.3d at 341. The mere fact that the Plan Administrator made a discretionary decision that did not benefit Plaintiff does not, by itself, render that decision unreasonable.

---

[13] Furthermore, the decision to set a floor of 4% in the face of low interest rates was a benefit to the employees. The fact that Duke then continued its existing rounding practice (see Defs.' Mem. (Doc. 28) at 19; Jeffries Decl. (Doc. 29) ¶ 20) after setting a minimum interest rate does not suggest an abuse of discretion.

This court does not find the remaining <u>Booth</u> factors influential in the present case.[14]  Based on the foregoing elements and undisputed facts, on balance, this court concludes that the discretionary decision by the Plan Administrator to round at five decimal places was reasonable.  That is, this court does not find that the Plan Administrator abused his discretion.  Because the actions taken were not an abuse of discretion, this court is without authority to upset the Plan Administrator's decision.  Therefore, Defendants' Motion for Summary Judgment must be granted, and Plaintiff's Motion for Summary Judgment must be denied.  In light of the foregoing, this court declines to address Defendants' two affirmative defenses.

## V.  <u>CONCLUSION</u>

For the reasons set forth herein, **IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment (Doc. 27) is **GRANTED**, that Plaintiff's Motion for Partial Summary Judgment (Doc. 25) is **DENIED**, and that this case is dismissed with prejudice.  A Judgment dismissing this action will be entered contemporaneously with this Memorandum Opinion and Order.

---

[14] As to the eighth <u>Booth</u> factor, Plaintiff has not presented any evidence of a conflict of interest which would impact this analysis.

This the 29th day of September, 2014.

_____
United States District Judge